# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

|  |  |  |
|---|---|---|
| **MARYLAND CASUALTY COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:11-cv-01188-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAPITOL SPECIALTY INSURANCE** | ) | |
| **CORPORATION**, | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————————) | | |

George M. Shumsky and Jeff Lindberg, SHUMSKY & BACKMAN, 1001 S.W. Fifth Avenue, Suite 1100, Portland, OR  97204.  Of Attorneys for Plaintiff.

Gregory L. Baird and Brian C. Hickman, GORDON & POLSCER, L.L.C., Suite 650, 9755 S.W. Barnes Road, Portland, OR  97225.  Of Attorneys for Defendant.

SIMON, District Judge.

Defendant Capitol Specialty Insurance Corporation ("Capitol") has moved for discovery sanctions against Plaintiff Maryland Casualty Company ("MCC").  Dkt. 37.  Capitol asserts that MCC failed to comply with this Court's discovery Order entered on October 17, 2012.  Dkt. 31. Specifically, Capitol contends that MCC's responses to Capitol's Interrogatory Nos. 4, 5, 10, and 12 are insufficient.  The Court agrees.  Capitol's motion is granted in part and denied in part.

## I.    BACKGROUND

This is an action for equitable contribution between insurers, arising out of an underlying construction defect claim brought against a common insured.  The following allegations are taken from Plaintiff's Complaint.  MCC provided liability insurance to its insured A&T Siding, Inc. ("A&T" or "A&T Siding") from May 7, 2000 through May 7, 2003.  Capitol provided liability insurance to A&T from January 12, 2004 through January 12, 2005.  A&T is a siding contractor that performed siding construction work from 2000 through 2004 at Brownstone Forest Heights, a 140-unit condominium development project (the "Project").  The developer of the Project is Brownstone Forest Heights, LLC ("Developer"), and the general contractor is Brownstone Homes, LLC ("General Contractor").

In June 2006, Brownstone Homes Condominium Association ("Association") filed a lawsuit in Multnomah County Circuit Court (the "Underlying Action") against several defendants, including the Developer and the General Contractor.  In November 2006, the defendants in the Underlying Action asserted third-party claims against various subcontractors, including A&T.  A&T tendered the defense and indemnification of that third-party claim to its insurers, including MCC and Capitol.  MCC accepted the tender and provided A&T with both defense and indemnification.  Capitol initially accepted the tender and began to provide A&T

OPINION AND ORDER, Page 2

with defense of the Underlying Action.  In September 2007, however, Capitol issued a letter denying coverage and denying any further defense obligation.  On or about February 25, 2008, the Association and A&T entered into a settlement agreement of the Underlying Action, under which MCC paid $900,000 to the Association on behalf of A&T.  In August 2011, MCC commenced this lawsuit for equitable contribution against Capitol in Multnomah County Circuit Court, and Capitol timely removed the action to this court.  MCC and Capitol are in the discovery stage of this lawsuit.

On September 28, 2012, Capitol filed a Motion to Compel.  Dkt. 26.  On October 17, 2012, the Court entered an Order and Opinion, granting in part and denying in part Capitol's motion.  Dkt. 31.  The Court ordered MCC to provide a privilege log, to produce certain documents in response to Capitol's requests for production, to respond to Capitol's requests for admission, and to answer certain interrogatories propounded by Capitol, including for purposes of the pending dispute Interrogatory Nos. 4, 5, 10, and 12.  MCC had previously objected that these interrogatories, and others, were inappropriate "contention" interrogatories that need not be answered pursuant to Local Rule ("LR") 33-1(d) and, alternatively, that the interrogatories called for irrelevant information.  The Court overruled MCC's objections.  Dkt. 31.  MCC then provided additional discovery to Capitol.

In its pending motion for sanctions, Capitol argues that MCC failed to comply with this Court's Order by continuing to provide insufficient responses to Interrogatory Nos. 4, 5, 10, and 12.  Capitol's Interrogatory No. 4 asks Plaintiff MCC to state and explain the reasonable costs to repair the "property damage" to the Project that is attributable to A&T *and that occurred during Capitol's policy period of 2004-2005*.  Capitol's Interrogatory No. 5 asks the same

OPINION AND ORDER, Page 3

question but for MCC's policy period of 2000-2003. Capitol's Interrogatory No. 10 asks Plaintiff MCC to identify all locations at the Project where "property damages" attributable to A&T *occurred during Capitol's policy period of 2004-2005.* Capitol's Interrogatory No. 12 asks Plaintiff MCC to state and explain the percentage of total damage attributable to A&T *that occurred during Capitol's policy period of 2004-2005.*

In response to Capitol's Interrogatory No. 4, MCC answered that A&T's expert, David Deress, opined that the total amount of the damages incurred at the Project for which A&T is responsible is $1,022,130. MCC added:

> **It is plaintiff's position that the Capitol policy should respond to all damages. If any damages occurred during Capitol's policy period, then Capitol is liable for all damages, up to its policy limits**. *See American States Ins. Co. v. National Fire Ins.*, 202 Cal. App. 4th 692 (2011) ("in cases involving progressive damages spanning several policy periods, each insurer is 'responsible for the full extent of the insured's liability (up to the policy limits), not just for the part of the damage that occurred during the policy period.'") (citations omitted); *Fireman's Fund Ins. Co. v. Ed Niemi Oil Co., Inc.*, 436 F.Supp.2d 1174, 1181 (D. Or. 2006), *rev'd on other grounds*, 317 Fed. Appx. 623 (9th Cir. 2008) ("under Oregon law, a general liability insurer is liable to its insured for the full amount of its policy regardless of whether or not there are other insurers who are also").

MCC's Response to Interrogatory No. 4. In response to Interrogatory No. 5, MCC stated: "Minimum of $1,022,130. See Answer to Interrogatory No. 4. Further, coverage under the MCC policy is not an issue in this equitable contribution litigation."

In response to Capitol's Interrogatory No. 10, asking for an identification of all locations where "property damages" attributable to A&T occurred during Capitol's policy period, MCC responded:

> The "property damage" at the 26 separate buildings at the Project that occurred during The Policy Period is documented in detail in the March 2, 2007 repair survey prepared by Johnson Construction Consulting, Inc.

OPINION AND ORDER, Page 4

("JCCI"). JCCI was retained by the plaintiffs in the underlying litigation. MCC incorporates herein by reference the survey prepared by JCCI. In addition, the percentages of the "property damage" attributable to A&T Siding for each subcategory of damage is set forth in the Wiss, Janey, Elstner Associates, Inc. ("WJE") "Forest Heights Allocation Summary" dated September 10, 2007. MCC also incorporates herein by reference the summary prepared by WJE.

MCC's Response to Interrogatory No. 10.  In response to Interrogatory No. 12, asking for the "percentage of the total damage attributable to A&T Siding that occurred" Capitol's policy period, MCC stated:

> 100%. *If any damages occurred during Capitol's policy period, then Capitol is liable for all damages, up to its policy limits*. *See American States Ins. Co. v. National Fire Ins.*, 202 Cal. App. 4th 692 (2011) ("in cases involving progressive damages spanning several policy periods, each insurer is 'responsible for the full extent of the insured's liability (up to the policy limits), not just for the part of the damage that occurred during the policy period.'") (citations omitted); *Fireman's Fund Ins. Co. v. Ed Niemi Oil Co., Inc.*, 436 F.Supp.2d 1174, 1181 (D. Or. 2006), *rev'd on other grounds*, 317 Fed. Appx. 623 (9th Cir. 2008) ("under Oregon law, a general liability insurer is liable to its insured for the full amount of its policy regardless of whether or not there are other insurers who are also").

MCC's Response to Interrogatory No. 12.

## II.    DISCUSSION

As the Court reads Plaintiff's interrogatory responses, MCC is declining to identify or quantify any property damage to the Project during a specific time period (during either Capitol's policy period or MCC's policy period), arguing that as long as *any* damage occurred during Capitol's policy period, then "Capitol is liable for all damages, up to its policy limits."  Although the Court previously ordered MCC to answer Interrogatory Nos. 4, 5, 10, and 12, the Court did not decide – one way or the other – whether MCC's legal argument is correct.  In its motion for discovery sanctions, Capitol argues that MCC has failed to answer Capitol's interrogatories and therefore sanctions are appropriate.

OPINION AND ORDER, Page 5

In response, MCC states:

> The interrogatory questions did not ask plaintiff to "date the damage" or
> establish the "timing of damage." If defendant asked those questions of
> plaintiff in the form of an interrogatory in this progressive loss case,
> plaintiff would have answered that the date of the damage and timing of
> damage cannot be determined with any scientific certainty. (See
> Declaration of David A. Deress at Exhibit 1). However, it can be
> established that damage occurred under both plaintiff and defendant's
> policies and the loss should be equitably apportioned between those
> policies in accordance with Oregon law.

Dkt. 40 at 2.  The Court disagrees with MCC, although the Court recognizes that Capitol's

discovery requests were not as precise as they might have been.  In addition, MCC, quoting from

the expert report of David A. Deress, states in its response to the pending motion that with "all of

the possible unknown variables affecting the rate and onset of wood decay, it is simply not

possible to backdate the initiation of decay or other forms of damage observed at the Brownstone

Forest Heights Townhomes to any degree of scientific certainty using any generally accepted

methods."  *Id.* at 3.

It thus appears to the Court, based on MCC's response to Capitol's motion for discovery

sanctions, that MCC is asserting the following factual position:

> MCC'S FACTUAL POSITION REGARDING TIMING OF DAMAGE

> It is not possible to determine, to any degree of scientific certainty using
> any generally accepted method, what is the portion of damage to the
> Project attributable to A&T Siding that occurred during Capitol's policy
> period versus the portion of damage to the Project attributable to A&T
> Siding that occurred during MCC's policy period.  It is, however, possible
> to conclude, and it is MCC's factual position, that damage to the Project
> attributable to A&T Siding occurred during both MCC's policy period and
> Capitol's policy period, and that the total amount needed to repair all
> damage to the Project attributable to A&T Siding, regardless of when it
> occurred, is at least $1,022,130.

OPINION AND ORDER, Page 6

For convenience, the Court will refer to this paragraph as "MCC's Factual Position Regarding Timing of Damage."  During the oral argument held on January 11, 2013, MCC confirmed that this is in fact MCC *factual* position on this issue.  MCC also asserts as its legal position that MCC need not prove what portion of the damages attributable to A&T occurred during either Capitol's or MCC's policy periods (as long as some damage occurred during each period) in order to prevail on its claim for equitable contribution among insurers.  That legal question is not currently before the Court, and the Court expresses no opinion on that issue at this time.

If MCC would have clearly stated the above-described "MCC's Factual Position Regarding Timing of Damage" in response to Capitol's interrogatories, there would have been no need for the present motion for discovery sanctions.  Capitol has requested as a discovery sanction that MCC's action be dismissed.  As Capitol recognizes, however, dismissal is only appropriate where a party's non-compliance with a court's discovery order is "willful" or done in "bad faith."  *See G-K Properties v. Redevelopment Agency of City of San Jose,* 577 F.2d 645, 647 (9th Cir. 1978).  Contrary to Capitol's assertion, the Court does not see sufficient evidence in the record for this conclusion.

Capitol's alternative request is that MCC be prohibited, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii), from presenting any evidence that contradicts or supplements its current responses to Interrogatory Nos. 4, 5, 10, and 15.  Rather than granting that relief, the Court instead orders that MCC is prohibited from presenting any evidence that contradicts MCC's "Factual Position Regarding Timing of Damage," as stated above, unless MCC on motion to the Court shows good cause for why it should be permitted to do otherwise.  Pursuant to Fed. R. Civ. P. 37(b)(2)(C), the Court denies Capitol's request for reasonable expenses, including attorney's

fees, because MCC's failure was substantially justified due to the imprecise wording of Capitol's discovery requests.

### III.    CONCLUSION

Defendant Capitol Specialty Insurance Corporation's motion for discovery sanctions against Plaintiff Maryland Casualty Company, Dkt. 37, is GRANTED IN PART AND DENIED IN PART.  Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii), MCC is prohibited from presenting any evidence that contradicts "MCC's Factual Position Regarding Timing of Damage" as set forth in this Order and Opinion, unless good cause is shown by MCC in a motion to the Court.

DATED this 11th day of January, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge